## McHugh et al., to use, v. James, County Treasurer.

*County funds—Interest—Fees and commissions on moneys due Common-
wealth—Right of county treasurer to retain.*

1. The salary of a treasurer of a county of the third class is fixed by statute
in accordance with article xiv, section 5, of the Constitution, and the only com-
pensation he can lay claim to for his services as such is the salary appointed by
law, which, for constitutional reasons, cannot be increased during his term of office.

2. The interest allowed by banks upon county funds deposited with them
belongs to the county, not to the county treasurer, and if he had contracted for
interest to be paid to himself, he would have been guilty of a misdemeanor.

3. Nothing short of express designation of a county treasurer as an agent for
the State *pro hac vice* would make it lawful for him to receive any compensation for
services in connection with the issuing of licenses, and any fees which he receives
for such services, in the absence of unequivocal legislative authority, belong and
are payable to the county.

Taxpayers' appeal from report of county controller. C. P. Lackawanna Co.,
March T., 1925, No. 169.

*O'Brien & Kelly, G. W. Ellis* and *H. L. Taylor,* for plaintiffs.

*Knapp, O'Malley, Hill & Harris,* for defendant.

NEWCOMB, P. J., May 16, 1927.—By formal pleadings the parties put the
case at issue, whereupon, by paper filed, trial by jury was waived and the
cause submitted for decision by the court, as provided by the Act of April 22,
1874, P. L. 109, and its supplements.

From the pleadings, evidence and arguments of counsel the following are
stated as the undisputed

### Facts.

1. For a term of four years expiring on the first Monday of January, 1926,
defendant had served as the duly qualified and commissioned treasurer of this
county. The issue is on the question of his liability to account for certain
moneys—hereinafter specified—which came to his hands by virtue of the
exercise of his official functions during the third year of his term, to wit, the
fiscal year of 1924.

2. During all the time in question the county had been one of the third
class, as defined by the Act of July 10, 1919, P. L. 887. Defendant was, there-
fore, "paid by salary" for his services as treasurer, as provided by statute
in accordance with article xIV, section 5, of the Constitution.

3. During the year in question certain interest moneys came to his hands
which had accrued on the sinking fund. This he accounted for. In addition
to that, he received the sum of $5023.93 for interest on the general county
funds. For this he did not account, nor was it charged to him by the con-
troller. Hence, it is the subject-matter of one of the two claims for which
surcharge is now sought. The other claim is for $4619.35, his receipts during
that year in fees and commissions on moneys due the Commonwealth for
various licenses issued by him. This fund he also retained unchallenged by
either controller or commissioners.

4. The general funds of the county had been kept by defendant on deposit
in thirty-six different banks, located in fifteen different municipalities. In
each instance the deposit stood to his credit as a public official. Instead of
crediting the interest to the account as it fell due, the banks remitted monthly
by checks, in like form, to the order of "David James, County Treasurer."
The proceeds amounting to the figure first above mentioned went to his per-
sonal account; it has been retained ever since, and that is the interest money
now in question.

McHugh et al., to use, *v.* James, County Treasurer.

5. The license fees and commissions at stake may be itemized as follows:

| | | | |
|---|---|---|---|
| Dog | Licenses | | $617.20 |
| Hunting | " | | 1261.80 |
| Fishing | " | | 1661.10 |
| Mercantile | " | (wholesale) | 68.50 |
| Mercantile | " | (retail) | 819.75 |
| Billiard and pool | " | | 63.00 |
| Brokers' | " | | 98.00 |
| Amusement | " | | 9.25 |
| Restaurant | " | | 20.75 |

Total......................................... $4619.35

6. Aside from a sweeping assertion of unbroken usage, defendant professes to justify his appropriation of the interest because it had been remitted to him directly by the banks without ever having been incorporated in his official deposit account.

7. For his right to the license fees and commissions he pleads statutory authority. The statutes invoked are respectively the following:

Dog licenses, May 11, 1921, P. L. 522; hunting licenses, May 24, 1923, P. L. 359; fishing licenses, May 16, 1921, P. L. 559, and July 8, 1919, P. L. 778; mercantile licenses, May 2, 1899, P. L. 184; billiard and pool licenses, May 25, 1907, P. L. 244; brokers' licenses, May 7, 1907, P. L. 175; amusement licenses, May 20, 1913, P. L. 229; restaurant licenses, April 25, 1907, P. L. 117.

8. Defendant's position seems to have had at least the tacit support of the controller and the commissioners. The latter officials are parties to the proceeding now only in a perfunctory way, because they were made so by process at the instance of the private citizens who took the appeal.

The facts are believed to warrant the following

### Conclusions of law.

1. The interest money in question was the product of the public funds, to which it belonged as an increment. Defendant could not lawfully turn it to his own personal profit by the means adopted to keep it out of his official deposit account, nor by any other expedient whatsoever.

2. The only compensation to which he can lay claim for his services as county treasurer is the salary appointed by law. All and singular the fees and commissions which he collected by virtue of his functions in that official capacity must be deemed to have been collected for the use of the county.

3. To take any class of these collections out of that category, defendant has the burden of proof. The requirement can be met and satisfied only so far as he shows by unequivocal legislative authority that he made collection, not in his capacity as treasurer, but as the duly appointed agent of the Commonwealth, and that the fees and commissions had been distinctly awarded to him in consideration of such agency.

4. This he does in case of the item for hunting licenses, being the sum of $1261.80, the second item in the schedule set forth in the fifth conclusion of fact. His right to this item of fees is conferred by express legislative authority, to wit, by Act of May 24, 1923, art. III, § 309, P. L. 359, 367.

5. As to the other items of similar character scheduled in that conclusion, there was no such authority during the year in question. Eliminating the collection on hunting licenses, plaintiffs' claim on that branch stands reduced from $4619.35 to $3357.55.

McHugh et al., to use, *v.* James, County Treasurer.

6. The issue is with plaintiffs, and the defendant must be held accountable for both the interest in question and the fees and commissions collected by virtue of his office as treasurer, to wit: Interest, $5023.93; fees, etc., $3357.55. Total for 1924, $8381.41.

This should have been turned over by him at the end of that fiscal year. The county is, therefore, entitled to recover the same, with interest from Jan. 5, 1925.

## Opinion.

Defendant's duty to account can be enforced only through the annual settlement at the hands of the controller, who is the auditing officer. That audit being once filed becomes conclusive at the end of ninety days, unless appealed from in the meantime. The margin for an appeal by the taxpayers is limited to thirty days after the expiration of the first sixty days allowed to the commissioners for that purpose. One-half of defendant's term went by without question. The third year would have gone the same way but for the intervention of private citizens. The nature of the defence taken would seem to warrant the inference that defendant is now claiming only that which he had theretofore been accustomed to retain without objection. It is quite useless to speculate on the subject; but it would be interesting—to say the least—to know why the other fiscal officers sanctioned such practice, especially in view of the fact that, so far as concerns the interest money, it had become a matter of common knowledge that their predecessors in office, together with the treasurer then in commission, had been at pains to have the question definitely settled by judgment of the highest court in the State in a case—hereinafter cited—which went up from this county for that specific purpose.

Neither the present commissioners nor controller has seen fit to take issue with defendant, who made answer that he is under no "legal nor moral liability" to account for the interest, as it belonged of right to him, first, because the banks had paid it to him by check, as above stated; and, second, because of a prescriptive right arising from usage.

On the score of "morals," it may not be impertinent to keep in mind the terms of his official oath. He qualified at the start by solemnly swearing, among other things, as follows: "I will not knowingly receive, directly or indirectly, any money or other valuable thing for the performance or non-performance of any act or duty pertaining to my office other than the compensation allowed by law."

The compensation so allowed was a specific salary, which, for constitutional reasons, could not be increased during his term.

His counsel makes an attempt to justify his appropriation of the interest. He lays stress on the circumstance that the cases heretofore decided have had to do with interest which had been credited by the banks to the treasurer's deposit account. Hence, he says, the interest here never became a part of the county funds.

Notwithstanding the high esteem in which counsel's professional opinion is justly held, it is impossible to seriously entertain this proposition. Indeed, in the report of the case above referred to, which originated in this county, no such distinguishing fact appears. If present, it was disregarded. The essential point at issue was not that of the particular form of profiteering by the treasurer, but that of the subject-matter, which was interest money earned by the public funds. That is what was passed upon without waste of words, but in terms which afford no encouragement to the supposition in mind of counsel. What was there concisely said reflected a consciousness of the fact that there can only be one code of right and wrong. If it were right for

defendant to take this interest money, he need resort to no indirection to get it. If not right, he could not make it so by a device to keep it out of the deposit account or by any other form of dissembling.

The banks were careful not to disguise the source of the funds which went to him by check. These were all to his order as "County Treasurer."

This serves to bring into view, perhaps, the most sinister feature of the case. It deals, not with a single bank or a single payment, but with monthly checks from thirty-six banks scattered throughout the length and breadth of the county. It is inconceivable that it could have so happened spontaneously. Coincidence to that extent overtaxes one's credulity. It can only be accounted for on the ground of a mutual arrangement between defendant and the banks.

That brings him face to face with the Penal Code, as stated in the like case of Lackawanna County *v.* Duffy, 248 Pa. 575. It was there said: "The funds upon which interest was allowed by the several banks did not belong to the appellant, and he could make no profit out of them. If he had contracted for interest to be paid to him, he would have been guilty of a misdemeanor: Act of March 31, 1860, § 63, P. L. 382. What he could not have done directly, public policy will not permit him to do indirectly."

That is the law of this case, so far as concerns the interest money now in question. On the other branch little need be said.

The statutes invoked by defendant as authority for retaining the fees collected on mercantile, billiard and pool, brokers', amusement and restaurant licenses have already been passed upon adversely to his contention: Bachman's Appeal, 274 Pa. 420. The same reasoning is applicable to defendant's claim under Acts of May 11, 1921 (dog licenses), of May 16, same year, and of July 8, 1919 (fishing licenses). They are ineffective for defendant's purpose, because they do not confer upon him the status of an agent for the Commonwealth. This is well illustrated in case of the Act of May 11, 1921, § 3, P. L. 522, which says: "The applicant shall also pay an additional fee of ten cents for the services of the county treasurer in issuing, recording and reporting said license to the Secretary of Agriculture and remitting fees and fines to the State Treasurer."

If it be assumed that the intention was to give this fee to the treasurer for his own use, then *pro tanto* the act would fall under the ban of the Constitution. That section can only be sustained on the interpretation that would make the fee collectible for the use of the county.

The Fishing License Acts, whether of 1919 or of 1921, are subject to the same interpretation. Says the Act of May 16, 1921, § 8, P. L. 559: "A county treasurer may collect for his own use for services rendered under this act the sum of ten cents to be paid by the applicant for a license," etc. This, no doubt, had superseded the 1919 Act. Whether so or not, it would be of no advantage to defendant. The corresponding provision of the earlier act was section 9, and it is substantially in the same terms as section 8 of its successor of 1921. The legislature could give him nothing that would serve to increase his compensation for services as treasurer. That remains true even though it puts additional duties upon him. Nothing short of his express designation as an agent for the State *pro hac vice* would make it lawful for him to receive any compensation for services in connection with the issuing of any of these licenses.

*Judgment.*

The foregoing formal conclusions will be filed by the prothonotary, and at the expiration of thirty days after notice to the parties or their respective

attorneys judgment to be entered against defendant in favor of plaintiff in the sum of $9554.88, unless exception shall have been taken in the meantime *sec. leg.*

From John G. McAskie, Scranton, Pa.